## CITY OF NEWARK, PLAINTIFF-APPELLEE, v. CHARLES REALTY COMPANY, DEFENDANT-APPELLANT.

Essex County Court
Law Division

Decided January 17, 1952.

352

*Mr. Louis Weiss,* attorney for the plaintiff-appellee.

*Mr. Louis Zemel,* attorney for the defendant-appellant.

FRANCIS, J. C. C.   The defendant here was convicted in the municipal court of violating paragraph 2 of section 1044 of the Plumbing Code of the City of Newark.   This paragraph provides as follows:

"The installation of water closets in the yard or on the piazza of any building is prohibited. The entrance to each water closet compartment shall be from the interior of the building, except when a compartment is supplied with adequate heating facilities to protect plumbing fixtures from freezing.

All existing installations of yard and piazza water closets, when not protected from freezing, shall be removed and new water closets placed in the building."

The complaint specifically charged the violation of this section and said:

"* * * In this, that the aforesaid Charles Realty Company, a corporation of the State of New Jersey, being the owner of premises known as 28 Rutgers Street, Newark, consisting of a frame building occupied by two families, did fail to provide said building with water closet compartments, the entrance to which shall be from the interior of the aforesaid building."

At the trial on this appeal the complaint was amended under *Rule* 2:11(*h*) (2) by adding after "building":

"And the pipes to the existing water closets not being protected from freezing did fail to place said water closets in the building."

The proofs produced by the plaintiff demonstrated ownership of the building by the defendant; that there was a piazza water closet on each of the two floors of the building; that entrance to each compartment was from the porch; that there were no heating facilities within the water closet compartments to protect the pipes from freezing; and that the trap of the first floor toilet extended under the porch and was completely exposed to outside temperatures, while the trap from the second floor extended within the lower compartment and so was not exposed to the outside. Notice was given to defendant to provide toilet accommodations within the apartments. Failure to comply resulted in this complaint.

No evidence was offered by the defendant. Its motion for judgment of acquittal is founded upon the claim that the ordinance is invalid, because its provisions are unreasonable and vague.

The neglect charged against the defendant transgresses both requirements of the ordinance, but since the nub of each requirement is the protection of pipes and fixtures from freezing. the only questions before the court are whether the ordinance in that respect makes an unreasonable demand and whether it is certain in its terms.

The defendant urges that it is unreasonable for the City of Newark to require removal of outside toilet facilities where

it is not made to appear that they have frozen, since the public health can be affected only by actual freezing. It brands as arbitrary an ordinance that empowers the health department to order the removal of outside facilities merely because there is a likelihood of freezing. And it is asserted that such a measure affords no opportunity to a landlord to "effectively protect" the pipes and that it operates against the landlord regardless of the means taken to prevent freezing. It is further argued that since there was no complaint of frozen toilets on the premises in question despite the existence each winter of temperatures considerably below freezing, the conclusion must be drawn that some effective means to prevent freezing were used.

Disposing first of the factual phase of the argument, it is sufficient to say that not only does it contain a *non sequitur*, but it outruns the evidence. The record is barren of testimony to indicate that the defendant took any steps to protect the installations from freezing.

Though it is admitted that this building is not within the purview of the Tenement House Act, that act, nevertheless, is used in order to show that the ordinance is unreasonable and arbitrary. It is said that the statute requires that the plumbing shall be effectively protected against freezing and that when such protection is found to be inadequate the board may direct that the water closet be placed in the house. It is argued that the statute gives a landlord opportunity to effectively protect the plumbing, while the ordinance affords no such opportunity. It is impossible to discern any such distinction between these enactments. Each imposes a duty to protect pipes against freezing, and provides for relocation of the facilities when such protection is not supplied. If anything, the ordinance is more certain in its provisions. It does not deprive one of the opportunity to take protective measures. Rather, it prescribes an explicit course of action in two possible situations. It deals first with future construction and (giving the language the most favorable interpretation to an owner) prohibits piazza water closets

unless the entrance thereto is from the interior of the building, except where the water closet compartment is supplied with adequate heating facilities to protect plumbing fixtures and pipes from freezing. And secondly, it deals with existing water closet installations and directs that when they are not protected from freezing, they shall be removed and placed in the building. In any event, the proof here does not demonstrate lack of opportunity to comply with the regulations. Notice of dereliction was given to the defendant on November 10, 1950; the complaint sets forth an offense on January 23, 1951; process did not issue thereon until June 13, 1951.

There was testimony to establish that the purpose of the ordinance was to forestall the filthy conditions which result when toilet pipes and fixtures freeze and feces and other waste material run over onto porch floors and even down to lower floors of a building. The measure is clearly designed to prevent the existence of such an unwholesome and unhealthful condition.

██ The contention that the city may not exercise its police power until harm has befallen lacks legal soundness. The major exercise of that power has always been in the field of prevention, to avert the occurrence of conditions that might put the well-being of the community to hazard. There is no appeal in the proposition that in a climate where freezing temperatures are frequently encountered, the city must stand by, helpless and without power to avoid the insanitary conditions that will certainly follow the freezing of unprotected water closets. Apt expression of the power of a municipality to ward off the occurrence of conditions dangerous to public health is found in the case of *Fenton v. Atlantic City*, 90 *N. J. L.* 403 (*Sup. Ct.* 1917), where the court stated (at *p.* 406) :

"* * * it is a proper exercise of the police power in the interest of public health, as well as its duty, to prevent a condition likely to be detrimental as much as it is to abate such condition after its evil consequences appear, and a board of health would meet with merited condemnation if it stood by and took no steps to provide,

by the exercise of ordinary prudence, a sanitary condition which would prevent an epidemic of disease likely to grow out of known conditions."

The defendant next complains that "the word 'protected' standing alone as contained in the Newark City Ordinance is uncertain and vague." It is urged that the word has so many implications that uncertainty and vagueness are engendered by its use. To give force to its argument, the defendant points out that enclosing of the space under the first floor porch, coupled with the fact that the trap from the second floor toilet is in an enclosed compartment, would result in complete protection "from the outside temperature." Again, the defendant points to a number of things which may be done to prevent water from freezing, such as letting it run freely, use of chemicals, etc. Any one of these means, it is said, would "protect" against freezing.

In the light of the presumption of the validity of the ordinance (*Wagman v. City of Trenton,* 102 *N. J. L.* 492 (*Sup. Ct.* 1926); *North Jersey Street Railway Co. v. Jersey City,* 75 *N. J. L.* 349 (*Sup. Ct.* 1907)), obviously the language used must be given a reasonable construction, if it is susceptible of such a construction. While the part of the enactment involved here is called "Paragraph 2," in fact it has two paragraphs. However, they are closely related to each other in dealing with specific phases of the same problem. The first paragraph of paragraph 2 speaks of "adequate heating facilities" to "protect" plumbing fixtures and pipes from freezing. Consequently, when the second paragraph speaks of existing water closets not being "protected from freezing" it must mean because of absence of "adequate heating facilities." If the word "so" appeared before "protected," this interpretation would be beyond question. But absence of "so" does not deprive the language of the suggested connotation which gives force and effect to the manifest purpose of the governing body of the municipality.

For the reasons stated the conviction of the defendant is hereby affirmed. Sentence will be imposed on January 25, 1952, at 10 A. M.